IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2025

## STANLEY JEFFERSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 16-06454          Chris Craft, Judge
_____

## No. W2024-01487-CCA-R3-PC
_____

Petitioner, Stanley Jefferson, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in denying his claims that trial counsel was ineffective by failing to object to the taking of Petitioner's DNA. Following our review of the entire record, the briefs of the parties, and applicable law, we affirm the judgment of the post-conviction court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and STEVEN W. SWORD, JJ., joined.

Ernest J. Beasley (on appeal), and Jim Hale (at post-conviction hearing), Memphis, Tennessee, for the appellant, Stanley Jefferson.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Daniel Woodford, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual and Procedural Background

On September 7, 2015, a "man with dreadlocks" rang the victim's doorbell. *State v. Jefferson*, No. W2020-00578-CCA-R3-CD, 2021 WL 2556654, at *1 (Tenn. Crim. App. Apr. 6, 2021). When the victim told the man that she would not open the door, the man "responded that he was a sheriff's deputy, and she unlocked the door. As soon as the lock was disengaged, the man pushed his way into the home." *Id.* The man "beat her with his fists" until she lost consciousness. *Id.* The victim's daughters discovered the attack on September 9 because the victim did not answer a scheduled phone call with her eldest

daughter. *Id.* at *2. On the eldest daughter's third attempt, the victim answered her phone but "could barely speak and seemed confused and unsure of her eldest daughter's identity." *Id.* The victim's younger daughter called 911 and went to the victim's house. When she arrived, she noticed that the victim's vehicle was missing. *Id.* at *2. The victim's vehicle was ultimately recovered from Petitioner's apartment complex and inside the vehicle was "a birth certificate copy request form from the Shelby County Office of Vital Records" that was filled out with Petitioner's personal information. *Id.* at *3.

The victim was unsure how long she was unconscious. *Id.* at *1. Although she did not remember being sexually assaulted due to losing consciousness, her shorts were found on the floor of her home, which her daughter said was unusual. *Id.* at *1-2. A physical examination revealed extensive injuries to her vaginal area. *Id.* at *3. Swabs were taken from the victim during the examination, and DNA testing confirmed that Petitioner's sperm was present on the swabs taken from the victim. *Id.* at *4.

Petitioner was subject to GPS ankle monitoring at the time of the offense, and the tracking system placed Petitioner in the vicinity of the victim's home on the night she was attacked. *Id.* The man who monitored Petitioner's location identified a photograph of Petitioner which showed that Petitioner wore his hair in dreadlocks. *Id.*

When interrogated by law enforcement, Petitioner admitted that "he impersonated a sheriff's deputy to gain entry [in]to the home and that he struck the victim[,] stole her vehicle[,]" and "took the victim's pants off to get her keys." He eventually said that he digitally penetrated the victim's vagina. *Id.*

Petitioner was convicted of aggravated rape, two counts of especially aggravated burglary, aggravated assault, and theft of property valued at more than $1,000, for which the trial court imposed an effective fifty-eight year sentence. *Id.* at *1. On direct appeal, Petitioner challenged only the sufficiency of the evidence supporting his aggravated rape conviction. This court affirmed Petitioner's convictions, finding that the "evidence was overwhelming." *Id.* at *6. Petitioner did not seek further review from the Tennessee Supreme Court.

On March 8, 2021, while his direct appeal was still pending, Petitioner filed a pro se petition for post-conviction relief. The post-conviction court entered an order staying post-conviction proceedings until Petitioner's direct appeal was resolved. In December 2021, the post-conviction court appointed counsel and lifted the stay. Post-conviction counsel filed an amended petition asserting "that Petitioner was denied effective assistance of counsel in that counsel failed to adequately challenge the taking of Petitioner's DNA and that counsel did not adequately discuss discovery and any issues of concern" with Petitioner.

At the July 26, 2024 hearing, Petitioner could not initially recall the names of his trial attorneys. However, he agreed that trial counsel's name "sound[ed] familiar" and co-counsel, who was present in the court room, "look[ed] familiar[.]" Petitioner testified that he did not have much opportunity to meet with co-counsel because he joined Petitioner's defense team shortly before trial. Trial counsel represented Petitioner from the time he was indicted through trial. Petitioner affirmed that "as a whole," he was pleased with trial counsel's performance during trial. He estimated that trial counsel met with him three times prior to trial, during which trial counsel reviewed discovery with him, and Petitioner felt as though trial counsel understood the case against him. However, Petitioner felt as though trial counsel was unprepared for trial because "everything that went on wasn't presented"; Petitioner did not elaborate on what should have been presented.

Petitioner agreed that his "main claim" was regarding the taking of his DNA. He denied signing or giving trial counsel permission to sign a consent order. He asserted that the consent order was not discussed with him, and that he did not want his DNA taken. Petitioner agreed that he "felt like [trial counsel] should have fought the taking of [his] DNA." When asked if there were "any other claims of things that [he was] concerned about that [he thought] should have been done by [his] lawyer[,]" Petitioner responded, "No, sir."

Trial counsel did not testify at the post-conviction hearing. However, co-counsel testified that he had practiced law for approximately twenty years and had started working for the Public Defender's office approximately six months prior to Petitioner's trial. Co-counsel had previously worked on rape cases and had handled "eight to ten trials" as a private attorney. Trial counsel asked co-counsel to sit "second chair . . . a couple [of] months" before trial. Co-counsel had access to discovery and believed that he had questioned some witnesses but did not have "any specific memory of who." Co-counsel did not believe that he was present when the State requested to take Petitioner's DNA as he did not "have any memory of it at all."

On cross-examination, co-counsel agreed that there was substantial evidence, in addition to the DNA evidence, against Petitioner. Co-counsel agreed that it may have been beneficial for Petitioner to provide a DNA sample because it could have been exculpatory if the results had been inconclusive or excluded Petitioner as a contributor.

On redirect examination, co-counsel explained that testing Petitioner's DNA would have been "a Hail Mary pass and in that case, it would be a good idea." He stated that because there was no other exculpatory evidence, DNA testing was "the one avenue we could possibly get something."

After hearing arguments of the parties, the post-conviction court stated that Petitioner had not proven prejudice from trial counsel's consent to the taking of Petitioner's DNA. Specifically, it noted that had trial counsel not consented to the taking, then "any Judge would have signed" a warrant to collect Petitioner's DNA based on the facts of the case.

In its August 23, 2024 written order, the post-conviction court found that "the DNA issue is the only remaining issue" because Petitioner "abandoned the ground in his petition that counsel did not adequately discuss discovery, and testified that other than the DNA issue, he had no other claims[.]" The court found that on August 4, 2017, the State filed a "Petition to Require Defendant to Furnish Biological Samples" and requested that the trial court sign a "Consent Order Directing Defendant to Provide Biological Samples to the State of Tennessee and Ordering Law Enforcement to Take Those Samples," which defense counsel had agreed to sign. The petition and consent order were attached to the post-conviction court's order denying relief. The word "Consent" was handwritten on the order, and the order was signed by an assistant district attorney general and counsel for Petitioner.

The post-conviction court found that "it would have served no purpose for [P]etitioner's attorneys to ask for a continuance to have a hearing on the DNA request" because "[a]ny court would sign a search warrant" for Petitioner's DNA. It stated that DNA testing would "take many months" after the testing was requested during which Petitioner would "sit in jail[.]" It implicitly credited co-counsel's testimony that consenting to the DNA testing was a "Hail Mary" search for exculpatory evidence. It further stated that Petitioner had "suggested no alternative track that [trial counsel] could have taken to prevent the inevitable." The post-conviction court found that:

> whether or not the attorneys consented to the taking of the DNA samples or this court ordered them taken after a hearing, the result would have been the same, that the DNA from [P]etitioner would be taken and compared to the DNA from the victim's swabs and from the gear shift of the victim's stolen car.

It noted that there was "a huge amount of evidence" against Petitioner in addition to the DNA evidence. Petitioner's timely appeal is now before this court.

**Analysis**

On appeal, Petitioner asserts that the post-conviction court erred in denying relief on his claim of ineffective assistance of counsel. He argues that trial counsel was ineffective by failing to communicate with him and by failing to object to the taking of

Petitioner's DNA. He further asserts that the cumulative effect of trial counsel's errors was "outcome determinative." In response, the State asserts that Petitioner's claims regarding communication and cumulative error are waived because the issues were not addressed in the post-conviction court, and that the DNA issue is waived due to inadequate briefing. Alternatively, the State asserts that the post-conviction court properly denied relief on Petitioner's DNA issue. We agree with the State that Petitioner has waived his issues for the reasons set out below. We also agree with the State that the post-conviction court properly denied relief on Petitioner's DNA issue.

The right to the effective assistance of counsel is safeguarded by both the Constitution of the United States and the Constitution of Tennessee; therefore, it is cognizable under the Post-Conviction Relief Act. U.S. Const. amend VI; Tenn. Const. art. I, § 9; T.C.A. § 40-30-103 ("Relief under this part shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States.").

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Pylant v. State*, 263 S.W.3d 854, 867-68 (Tenn. 2008) (citing *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007)). Thus, an appellate court is bound by the factual findings of the post-conviction court unless the evidence in the record preponderates against those findings; but the post-conviction court's application of law to those factual findings is reviewed de novo with no presumption of correctness. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (citing *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009)); *State v. Fields*, 40 S.W.3d 450, 457-58 (Tenn. 2001). A petitioner alleging the ineffective assistance of counsel "shall have the burden of proving the allegations of fact by clear and convincing evidence." T.C.A. § 40-30-110(f); *Dellinger*, 279 S.W.3d at 291.

When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697; *Nesbit v. State*, 452 S.W.3d 779, 786-87 (Tenn. 2014). Accordingly, if either factor is not satisfied, there is no need to consider the other factor. *Finch*, 226 S.W.3d at 316 (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Deficient performance is representation that falls below "an objective standard of reasonableness" as measured by prevailing professional norms. *Kendrick v. State*, 454 S.W.3d 450, 457 (quoting *Strickland*, 466 U.S. at 688). To show prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Kendrick*, 454 S.W.3d at 458. A reasonable probability is a "probability

sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Kendrick*, 454 S.W.3d at 458.

Petitioner's claim that the cumulative effect of trial counsel's errors were "outcome determinative" was not included in his pro se petition or the amended petition, and it was not argued or addressed at the post-conviction hearing. Thus, it is waived as being raised for the first time on appeal. *See Brooks v. State*, No. W2023-01492-CCA-R3-PC, 2024 WL 3387309, at *9 (Tenn. Crim. App. July 12, 2024) (finding issues waived when the issues were not contained in the petition, not argued at the hearing, and not addressed in the post-conviction court's order), *no perm. app. filed*.

Although Petitioner's amended petition included a claim that trial counsel was ineffective in communicating with Petitioner, Petitioner testified that his "main issue" was the DNA issue, and he did not testify about any alleged deficiencies with trial counsel's communication. Petitioner's testimony and argument at the hearing focused exclusively on the DNA issue, and the post-conviction court limited its ruling accordingly after finding that Petitioner had abandoned any other claims. *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) ("[I]ssues not addressed in the post-conviction court will generally not be addressed on appeal."); *Cole v. State*, No. W2023-00517-CCA-R3-ECN, 2023 WL 8947153, at *6 (Tenn. Crim. App. Dec. 28, 2023) (finding claim regarding witness testimony abandoned when counsel announced during the evidentiary hearing that "he was only pursuing the claim relating to the supplemental police report"), *perm. app. denied* (Tenn. July 18, 2024). Thus, Petitioner affirmatively abandoned his claim that trial counsel communicated ineffectively.

The State asserts that Petitioner has waived his challenge to trial counsel's consent to the taking of Petitioner's DNA due to inadequate briefing. Issues raised by an appellant that "are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived." Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7)(A). Petitioner's brief includes only four citations to the record, all of which are found in his very minimal Statement of the Facts, and Petitioner's argument is confined to one paragraph. While Petitioner cites general post-conviction authority, he cites to no specific authority in support of his argument that trial counsel was ineffective for consenting to the taking of Petitioner's DNA. Thus, Defendant's brief is inadequate under our rules, and the issue is waived.

Waiver notwithstanding, Petitioner has failed to establish that the post-conviction court erred in denying relief on his claim that trial counsel was ineffective for not challenging the taking of his DNA. The post-conviction court found that Petitioner failed to show how trial counsel could have prevented taking of his DNA, and it credited co-counsel's testimony that consenting to the taking was a "Hail Mary" attempt to locate

exculpatory evidence. It further found that the taking of Petitioner's DNA was "inevitable" because "[a]ny court" would have allowed the State to compel taking of Petitioner's DNA. Additionally, the post-conviction court found that there was "a huge amount" of evidence against Petitioner even without the DNA evidence. The record does not preponderate against the post-conviction court's findings of fact.

This court will not second-guess a reasonable trial strategy. *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). Further, "that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). Co-counsel testified that he had reviewed discovery and believed that in Petitioner's case, consenting to taking Petitioner's DNA was "the one avenue we could possibly get" exculpatory evidence. Trial counsel was not deficient for consenting to the taking of Petitioner's DNA just because it ultimately hurt the defense. *See id.* Further, Petitioner has not presented an avenue that trial counsel could have pursued to prevent the taking of his DNA. Petitioner has failed to establish that trial counsel's performance was deficient.

When proof of guilt is overwhelming, proving prejudice is exceedingly difficult. *See Proctor v. State*, 868 S.W.2d 669, 673 (Tenn. Crim. App. 1992); *Bray v. State*, No. M2011-00665-CCA-R3-PC, 2012 WL 1895948, at *6 (Tenn. Crim. App. May 23, 2012) (finding that, in light of overwhelming evidence, petitioner could not demonstrate prejudice); *McNeil v. State*, No. M2010-00671-CCA-R3-PC, 2011 WL 704452, at *6 (Tenn. Crim. App. Mar. 1, 2011) (finding that overwhelming evidence of guilt precluded showing of prejudice from admission of evidence at trial). As noted by this court on direct appeal and by the post-conviction court, the evidence against Petitioner was overwhelming. Even without the DNA, the State presented evidence that Petitioner matched the victim's description of her attacker, GPS tracking placed Petitioner in the vicinity of the victim's home on the night of the offense, the victim's vehicle was recovered from the parking lot of Petitioner's apartment complex, a vital records request form with Petitioner's personal information was found in the victim's vehicle, and Petitioner confessed to the crimes. This evidence overwhelmingly established Petitioner's guilt. Thus, even had trial counsel been able to prevent the taking of Petitioner's DNA, it is unlikely that it would have changed the outcome of Petitioner's trial. Petitioner has not established prejudice.

Petitioner is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

s/ *Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE